HENRY J. COOKINHAM, JR., and Another, as Executors, etc., of HENRY J. COOKINHAM, Deceased, Appellants, v. ANNIE E. HEPLER, Respondent.

County Court, Oneida County, July 11, 1932.

*Cookinham & Macomber* [*Victor A. Macomber* of counsel], for the appellants.

*Miles W. Jones*, for the respondent.

HAZARD, J.  The action was brought upon a promissory note for fifty dollars, dated April 20, 1925, payable in three months, with interest.  Defendant concedes the making of the note, denying everything else with reference to it, and setting up the affirmative defense of payment.  Upon the trial one of the executors-plaintiff testified that he found the note among decedent's possessions, admitting on cross-examination that he did not know whether or not it was paid, and rested.  The defendant was then sworn, and of course was confronted with the statutory rule (Civ. Prac. Act, § 347) forbidding her to testify to personal transactions with a decedent.  That rule was rather seriously stretched, not to say broken, during defendant's testimony, as for instance (p. 4), "I endorsed it and took it to Mr. Cookinham," and (on p. 5), "I endorsed it and handed it to Mr. Cookinham for payment." And again (on p. 5), "I went down to Mr. Cookinham with it and endorsed it and paid it to him."  Thus testimony was offered with reference to two checks, known in the case as defendant's Exhibits A and B.  Exhibit A was a check for $150, dated July 2, 1926, and Exhibit B a check for $50, dated July 2, 1927.  Both were received in evidence over exception and objection, and we must suppose, as they constituted the only evidence of payments which the case contains, it was on the strength of them, or one of them, that the judge in the court below found against the plaintiff.

The situation with reference to testimony of transactions between the defendant and the plaintiff's decedent is rendered uncertain by the rulings of the court who received, among other things, the testimony of the defendant quoted above, and then ruled (p. 7), "I am striking out all of that part of her testimony as to conversations which she had with the deceased, but I am taking these checks."  In view of the uncertainty as to just what proof may be considered in the case and what may be considered as stricken out, I prefer to base the decision which I am about to make upon the point that the defense of payment was not sustained by the defendant.  Starting out with the concession in the answer that the defendant made the note, and the fact that it was found among the decedent's effects, which substantially established delivery, the claim of payment was an affirmative defense, and the burden of proving it was upon the defendant.  We start out with the salient fact that the decedent, represented by the plaintiffs, *had possession*

*of the note in suit.* The fact of possession raises a very strong presumption in the plaintiffs' behalf. As a legal proposition it raises the presumption that decedent was the owner and holder, and that he was a holder for value and in due course. This question was discussed at length in a former decision in this court (*Brown* v. *Janes,* 71 Misc. 316), in which a number of cases are cited. (See, also, *Bedell* v. *Carll,* 33 N. Y. 581, 583.) It has also been held that the possession of a note is presumptive evidence that it has not been paid. (*Howell* v. *Van Siclen,* 6 Hun, 115, 116.) That decision may be dictum only, but it seems logical that if a note had been paid it would be " taken up," that is, it would be surrendered to the maker. Such is the common and almost universal experience of mankind. One pays a note and it is surrendered to him. He does not pay a note and leave it outstanding in the possession of the original payee (or anybody else). There is no room for argument about all this. Of course I am not unaware that there may be in extremely rare cases an exception to this and to every other rule, but as it seems to me, even as between the original parties, the fact that the note is in the possession of the payee, and that the maker has no receipt to show, indicates very strongly that she still owes the note.

In this case it was sought to establish payment by producing the two checks above referred to, and marked defendant's Exhibits A and B. Those checks are not before me, but I assume they contained the decedent's indorsement, and doubtless were payments which reached him. There is nothing about their dates which at all clearly connects them up with the transactions in question. For instance, the note dated April 20, 1925, matured July 20, 1925, whereas defendant's Exhibit A, the $150 check, was dated July 2, 1926; and Exhibit B, the $50 check, was dated July 2, 1927. It certainly does not seem as a matter of dates, or even amounts, that the two exhibits, or either of them, had very much to do with the note which matured on July 20, 1925. But above and beyond all this, it affirmatively appeared that the defendant had had transactions with the plaintiff's decedent, and it affirmatively appears (p. 8), that the two checks in question were given in payment for services in a divorce transaction, as witness the following: " Q. You mentioned a divorce action. What bearing does that have on these two checks? A. *Those were in payment.* Q. For services? A. Yes." And later on the same page: " Q. Are those two checks, do they represent the total cost of the divorce action? A. No. Q. What did that proceeding cost you? A. I paid Mr. Cookinham the sum of $900." It is true the last answer was

stricken out, but even so, it affirmatively appears upon the defendant's own statement that the two exhibits, defendant's A and B, were given in payment for the late Mr. Cookinham's service in a divorce action. Taking the defendant at her word, there does not remain any shred of evidence that the note in suit had been paid. I rather coincide with the judge in the court below that section 347 of the Civil Practice Act forbidding testimony as to transactions with a deceased person often works a hardship. However, it is the law. What the defendant might have testified to but for that law I cannot even conjecture, and the court below should not have endeavored by judicial construction or action to repeal that law. The fact remains that there is no shred of evidence in the case showing that the note in suit was paid.

The question remains as to the proper disposition of this appeal. The case of *Randall* v. *Osborne* (162 App. Div. 186) is cited as authority for the proposition that the County Court has power to " modify " a judgment rendered in the court below, by rendering an entirely different judgment. In that case there was a sworn complaint served, and the defendant refused to file a verified answer, notwithstanding which the justice seems to have dismissed the complaint.

The County Court " modified " that judgment by setting it aside and rendering a judgment for the amount demanded in the verified complaint, and the Appellate Division held the action warranted. I suppose the suit here is analogous, as we have a case in which the affirmative defense of payment has utterly failed. I, therefore, reach the conclusion that the judgment of the court below should be modified, and a judgment rendered in favor of the plaintiff for the amount of the note, with interest. I assume that the costs in this case should be regarded as controlled by subdivision 5 of section 452 of the Justice Court Act, which would limit the costs to ten dollars to the appellant, which amount I think he should have.

Judgment may be prepared accordingly.