■ FRANCIS SOULIER, as Administrator of the Estate of RAYMOND F. SOULIER, Deceased, Respondent, v ELLIOT R. HUGHES et al., Appellants.—Weiss, J. Appeal (1) from a judgment of the Supreme Court in favor of plaintiff, entered February 28, 1985 in Saratoga County, upon a verdict rendered at Trial Term (Brown, J.), and (2) from an order of said court, entered March 20, 1985 in Saratoga County, which denied defendants' motion to set aside the verdict.

On May 17, 1980 at approximately 11:15 P.M., plaintiff's decedent, Raymond F. Soulier, was fatally injured when the motorcycle he was riding collided with an automobile driven by defendant Elliot R. Hughes and owned by defendant Carol Wittman at the intersection of Route 9 and Crescent Cohoes Road in the Town of Colonie, Albany County. Decedent was proceeding north and defendant south on Route 9 just prior to the accident. In the instant wrongful death action,* the critical dispute involves the point of impact of the two vehicles. Plaintiff sought to prove that as decedent proceeded north in the passing lane, Hughes' vehicle pulled into that lane without yielding to the approaching motorcycle. In contrast, defendants produced testimony that the collision occurred in the southbound left-turn lane as the Hughes vehicle was stopped, waiting to negotiate the left turn onto Crescent Cohoes Road. The jury resolved this conflict in plaintiff's favor (see, Pfaffenbach v White Plains Express Corp., 17 NY2d 132) and returned a gross verdict of $80,000, with comparative fault attributed 65% against Hughes and 35% against decedent. This resulted in a net verdict for plaintiff of $52,000, plus $1,330 in property damage, to which interest was added pursuant to EPTL 5-4.3. Defendants' motion to set aside the verdict was denied and this appeal ensued.

Defendant's principal contention on appeal is that the trial court erred in refusing to strike expert testimony based in part on the existence of a skid mark for which no proper foundation has been established. We disagree. This issue centers around a photograph taken by a State trooper shortly after the accident, before the vehicles were moved, which depicts a single skid mark, situated in the north passing lane and leading directly to the point where the vehicles came to rest. Defendants maintain that plaintiff's accident reconstruction expert improperly utilized this photograph in forming an opinion as to the point of impact and speed of the motorcycle, since there was no direct correlation between decedent's motorcycle and the skid mark. For the same reason, defendants objected to the testimony of Investigator Robert Leu, who opined that the skid mark was left by decedent's motorcycle and that the collision occurred in the northbound passing lane. As a general premise, an expert's opinion must be based on established facts relevant to the controversy (see, People v

---

* Plaintiff's cause of action for conscious pain and suffering was discontinued and the amount of the claim for property damage to the motorcycle was determined by stipulation.

*Cronin,* 60 NY2d 430, 434 [concurring opn]; *Cassano v Hagstrom,* 5 NY2d 643, 646; *cf.* Fisch, New York Evidence § 132, at 75 [2d ed]). Direct, positive identification of the skid mark was not necessary provided that circumstances indicated a reasonable degree of relevance *(see,* Fisch, New York Evidence § 132, at 75-77 [2d ed]). In our view, the picture itself, received into evidence without objection, and the circumstances surrounding its taking provided a sufficient foundation for further testimony relative to the skid mark *(see, People v Levia,* 3 AD2d 42; *see also, People v Mirenda,* 23 NY2d 439, 452-454). The absence of direct evidence simply affected the weight, not the admissibility of such testimony *(see, People v Levia, supra).*

In any event, it must be recognized that plaintiff's accident reconstruction expert based his opinions on several factors other than the skid mark. He specifically testified that it was not necessary to utilize the skid mark in reaching the conclusion that decedent was traveling at approximately 40 miles per hour *at impact* and that the point of impact was in the north passing lane, although the skid mark was consistent with this determination. It is of limited consequence that the skid mark was essential to calculate the speed of decedent's vehicle *prior to braking,* since other eyewitness testimony was available on this point. Moreover, there was substantial evidence placing the collision in the northbound passing lane *(see, Penner v Central School Dist. No. 1,* 40 AD2d 883, 884, *lv denied* 31 NY2d 645; *Malanify v Pauls Trucking Co.,* 27 AD2d 622).* Numerous photographs received into evidence show that the vehicles came to rest in the northbound lanes. The extensive damage to the passenger side of the Hughes vehicle is consistent with plaintiff's assertion that the Hughes vehicle was turning left at impact, but inconsistent with Hughes' deposition testimony, received into evidence, that his vehicle was stopped in a north/south direction. Based on the angle of impact, the damage sustained, the location of debris and the 40 mile-per-hour speed of the motorcycle at impact, plaintiff's reconstruction expert rejected as physically impossible defendants' theory that decedent's motorcycle struck the Hughes vehicle while attempting to navigate from the southbound lanes back to the northbound lanes *(see generally, Malanify v Pauls Trucking Co., supra,* p 622). In addition, the testimony of several eyewitnesses indicated that the Hughes vehicle had intruded into the northbound lane prior to impact. Although defendants submitted contrary evidence placing the collision in the southbound lanes, and showing that decedent had a .15% blood alcohol content at the time of death, the weight of

the evidence amply supports the jury verdict. This is particularly true given plaintiff's lesser degree of proof (see, Noseworthy v City of New York, 298 NY 76; Pedersen v Balzan, 117 AD2d 933).

Defendants' remaining contention that the trial court erred in awarding interest on the entire principal sum pursuant to EPTL 5-4.3, without differentiating between prejudgment and postjudgment losses of future income, is not persuasive. Defendants neither requested a charge differentiating between these two types of losses so as to facilitate computation of interest in the manner now propounded, nor objected to the way interest was actually computed, thereby waiving their claim (see, Harris v Armstrong, 64 NY2d 700; Collins v Weinberg, 88 AD2d 1037). In any event, the statute provides for interest on the "principal sum recovered" without distinguishing between prejudgment and postjudgment losses of future income. To the extent Shu-Tao Lin v McDonnell Douglas Corp. (742 F2d 45, 51-52), relied on by defendants, suggests otherwise, we decline to adopt its reasoning.

Judgment and order affirmed, with costs. Kane, J. P., Casey, Weiss, Levine and Harvey, JJ., concur.